458 So.2d 786 (1984)
William H. ROBERTS and Thelma Roberts, His Wife; Sandra A. McDonald and Orange Realty Masters, Inc.; and Ulay Thompson, Jr. and Florida International Realty, Inc., Appellants/Cross-Appellees,
v.
Ronald A. RIVERA and Carmen Rivera, His Wife, Appellees/Cross-Appellants.
William H. ROBERTS and Thelma Roberts, His Wife, Appellants/Cross-Appellees,
v.
Ronald A. RIVERA and Carmen Rivera, His Wife, Appellees/Cross-Appellants.
Nos. 83-614, 83-680, 83-687 and 83-1017.
District Court of Appeal of Florida, Fifth District.
October 11, 1984.
Rehearings Denied November 19, 1984.
*787 James A. Lowe, Orlando, for appellants William H. Roberts and Thelma Roberts.
Michael A. Miller, of Walker, Buckmaster, Miller & Ketchan, Orlando, for appellants Sandra A. McDonald and Orange Realty Masters, Inc.
James A. McNabb, Jr., Orlando, for appellants Ulay J. Thompson, Jr. and Florida International Realty, Inc.
Scott J. Johnson and Robert D. Henry of Maguire, Voorhis & Wells, P.A., Orlando, for appellees Ronald A. Rivera and Carmen Rivera.
SHARP, Judge.
We consolidate these two cases for purposes of disposing of them on appeal because they involve the same real estate transaction and parties. The appellees/cross-appellants (appellants), Ronald and Carmen Rivera, bought twenty-two acres of land from appellants/cross-appellees (appellees), William and Thelma Roberts.
In one case (Nos. 83-614, 83-680 and 83-687), the Riveras sued the Roberts for fraudulent misrepresentation and concealment, seeking damages and rescission. The Riveras also sued various real estate brokers and agents, including appellants Sandra McDonald and Ulay Thompson, for breach of fiduciary duties owed them in handling the transaction. In the other case (No. 83-1017), the Roberts sought to foreclose a purchase money mortgage executed by the Riveras on the property and the Riveras counterclaimed for damages and rescission based on fraud.
After jury verdicts in the first case finding that the Roberts were liable for fraudulent concealment and that the two real estate agents breached their duty of care owed the Riveras, the court entered a final judgment for $20,000.00 against all defendants jointly and severally.[1] In the second case, based on principles of collateral estoppel, the trial court entered a final summary *788 judgment foreclosing the mortgage, but allowed the Riveras a set-off against the balance due on the mortgage in the amount of the judgment rendered in the first case.
We reverse the judgment and verdict against the Roberts in the first case because we find insufficient evidence of fraudulent concealment or misrepresentation on their part. Accordingly, the set-off in the mortgage foreclosure should also be reversed. However, as to the real estate agents, we find there was sufficient evidence to support the $20,000.00 judgment against them, and accordingly we affirm that part of the judgment in the first case.
The evidence pertinent to fraudulent concealment was as follows. In 1980, the Riveras became interested in purchasing property for investment purposes in the Orlando area. They saw Orange Realty Masters, Inc.'s sign on some property near Disney World. When they called that office they reached McDonald, who said that her main expertise was in finding developable property. She, in turn, introduced Ronald Rivera to Thompson, a real estate broker. Rivera told them he wanted to buy land to develop and sell as residential lots for single family dwellings. Thompson and McDonald agreed to work with Rivera to locate and inspect such a property, handle rezoning if needed, and sell the lots. Thompson would receive $1,000.00 in advance, and both Thompson and McDonald would be paid commissions as the lots were resold. Eventually, they showed Rivera a twenty-two acre tract on Lake Mabel owned by Roberts. According to the listing, the best use of the property was for residential estates. The Roberts had owned the property for thirty-six years.
Rivera visited the Lake Mabel property three times before signing the contract to buy it. He first walked the property with McDonald, who warned him that the lake level was unusually low at that time due to a drought. On another occasion Rivera was told by Richard Brown, another developer and friend of Thompson's, that the property had low spots and that it could not be developed economically.
Prior to signing the contract, Rivera asked McDonald and Thompson to check the property to see if its low elevation would be a hinderance to its development. He understood that they would have an engineer inspect the property and relied upon them to do so. They told him before closing an engineer had checked the property and found it suitable for development.
Rivera first met William Roberts on November 19, 1980, the day the contract was signed. The contract contained no warranties or representations concerning the elevation of the property, and at Roberts' insistence a clause making the closing subject to a satisfactory soil test report was excised. Rivera testified Roberts told him there were "no problems" with the property, but he had only rarely been on the property during the thirty-six years he owned it, and neither he nor his wife were knowledgeable about farming or soil conditions. He admitted he knew Rivera would need to make some soil tests before building, but he was unaware of the nature or extent of such tests.
After the closing an engineer was retained to do soil boring tests. The results indicated the property would be extremely difficult to develop. Another witness with the Orange County Planning Department testified he did not think the Board of Commissioners would approve the property for residential development under any circumstances. If developable into ten two-acre lots, the tract would be worth $135,000.00, but since it encompassed low muckland, its value was approximately $47,400.00. The Riveras paid $98,000.00 for the property.
It is clear that the Riveras did not receive the kind of real estate they intended to buy and that they paid more for it than it was worth. However, to hold the sellers liable for this unfortunate outcome, there must be proved some misrepresentation on the part of the sellers, or some concealment of facts known to them under circumstances impelling disclosure, i.e., a hidden defect, Sun Life Assurance Company *789 v. Land Concepts, Inc., 435 So.2d 862 (Fla. 4th DCA 1983); Amazon v. Davidson, 390 So.2d 383 (Fla. 5th DCA 1980), and the buyers must show they reasonably relied on the sellers' actions in such regard.
Here there was no proof the Roberts made any oral or written representation to the Riveras regarding the soil conditions. Nor did they conceal any facts they knew about the property which the Riveras did not already know or could easily have discovered. Further, there was no proof the Riveras relied upon anything the Roberts did or did not say. In fact the evidence is clear that regarding the soil condition the Riveras relied upon their two real estate agents and the supposedly satisfactory engineering report. Further, it would not have been reasonable for the Riveras to have relied upon the Roberts on this point since they were neither experts, nor had they made soil tests on the property. This is a case where the doctrine of caveat emptor should apply.
Accordingly, we reverse in part and affirm in part the judgments in Case Numbers 83-614, 83-680 and 83-687; and we reverse in part the judgment in Case Number 83-1017 and remand it for proceedings consistent with this opinion.
REVERSED IN PART, AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
COWART, J., concurs.
DAUKSCH, J., dissents with opinion.
DAUKSCH, Judge, dissenting:
I respectfully dissent.
These cases were pursued through the trial court by good lawyers presenting volumes of testimony and other evidence which often was quite conflicting. Everyone seemed to have been pointing fingers at everyone else.
The jury and the trial judge had a hard time resolving the conflicts, but they did so. I would not have the tough job they had. In fact, I do not. Nor does any appellate judge. The verdict and judgments were supported by evidence, albeit in conflict with other evidence. I would affirm their efforts. If I were to reverse then I would reverse as to all defendants.
The "comparative negligence" in an intentional tort case does present a novel issue, as the majority opinion mentions, but that must be left for another day. It serves no purpose, except a personal one, to expound upon interesting legal theories in dissenting opinions.
NOTES
[1] The verdict assessed compensatory damages at $50,000.00, but found the Riveras were 60% negligent in causing the damage. We do not reach the propriety of applying comparative negligence principles to a cause of action involving damages caused by fraud due to our resolution of this case on other grounds.