Commonwealth vs. Violet Weed
(and a companion case[1]).

Middlesex.  January 23, 1984. — January 31, 1984.

Present: Hale, C.J., Grant, & Perretta, JJ.

*Constitutional Law*, Self-incrimination.  *Witness*, Self-incrimination.
*Waiver.  Practice, Criminal*, Grand jury proceeding.  *Contempt.*

Where the record of a witness's testimony before the grand jury which
    returned indictments against her son showed that the witness had testi-
    fied freely and voluntarily after a prosecutor had given her a specific
    and detailed recitation of her rights, the witness was held to have
    waived the right to assert her constitutional privilege against self-
    incrimination when she was summoned to testify at the trial of the in-
    dictments.  [465-467]
Where the record at a pretrial hearing indicated that a witness had been
    misinformed by a prosecuting attorney as to the consequences of his
    testifying both before a grand jury and at a subsequent hearing on a
    defendant's motion to suppress evidence, and where it did not appear
    that the misinformation had been corrected or had had no effect on the
    witness, he could not be deemed to have waived his constitutional
    privilege against self-incrimination by reason of his testimony at either
    proceeding.  [467-470]

Adjudications of contempt in the Superior Court Depart-
ment by *Tuttle*, J., on January 20, 1984.

*John H. Cunha, Jr.* (*Jill Heine* with him) for the defend-
ants.

*Patricia A. McEvoy*, Assistant District Attorney, for the
Commonwealth.

Perretta, J.  On July 19, 1983, the grand jury returned
indictments against Theodore J. Trigones (Trigones),
charging him with murder (G. L. c. 265, § 1) and with
breaking and entering a dwelling in the nighttime and mak-

---

[1] Commonwealth *vs.* Roland A. Weed.

ing an assault on a person lawfully therein (G. L. c. 266, § 14). Violet Weed and Roland A. Weed (Weeds) are the mother and stepfather of Trigones. During police investigation of the crimes, the Weeds were interrogated and made statements to the police. They testified before the grand jury and at a hearing on Trigones' motion in limine seeking to suppress certain statements made by him to Roland Weed. The suppression motion was heard on January 10 and 11, 1984, and was denied on the latter date. The jury was impanelled on January 13, 1984. On January 18th, the trial judge was advised that the Weeds were represented by counsel and that they wished to have a hearing on their rights against self-incrimination under the Fifth Amendment to the United States Constitution.

The trial judge held a hearing (which will be referred to as the waiver hearing) on the claims of privilege on January 20, 1984, and concluded that the Weeds had waived their Fifth Amendment rights. Each of the witnesses was then called by the Commonwealth to testify, and each refused so to do. The trial judge adjudicated Violet Weed and Roland Weed in summary criminal contempt, Mass.R.Crim.P. 43, 378 Mass. 919 (1979), and ordered them incarcerated for the balance of the trial.

The Weeds' appeals from the judgments were heard on an expedited basis on January 23, 1984. Because of the nature of the controversy, we entered separate orders on January 27, 1984, affirming the judgment against Violet Weed and reversing the judgment against Roland Weed, without an accompanying opinion.

In adjudicating the Weeds in summary criminal contempt because of their respective refusals to testify, see Commonwealth v. Corsetti, 387 Mass. 1 (1982), the trial judge made the following pertinent findings of fact. As a result of Miranda warnings given to them by the police and the prosecutor investigating the matter, the Weeds retained and conferred with an attorney on the morning of July 9, 1983. Roland Weed went to the police station with his lawyer on July 12, 1983, signed a Miranda waiver card, and

gave information to the police. When Violet Weed appeared before the grand jury, she was informed of her privilege against self-incrimination by the prosecutor. The trial judge found that she "thoroughly understood her Fifth Amendment rights before testifying."

As to Roland Weed, the trial judge noted that the grand jury minutes "do not indicate that Roland A. Weed was informed on the record of any of his rights not to incriminate himself." However, the trial judge found that Roland "had a thorough understanding of his Fifth Amendment rights and knew that he had a right not to testify as to any matter that might incriminate him."

The trial judge concluded that the Weeds' answers to questions could incriminate them (there is no dispute on this point), but that the Weeds had waived their respective rights to refuse to testify by freely answering questions put to them in the grand jury proceedings and at the hearing on Trigones' motion. The question before us, as to each witness, is the issue of waiver.

"It has long been the law in Massachusetts that if an ordinary witness, not a party to a cause, voluntarily testifies to a fact of an incriminating nature he waives his privilege as to subsequent questions seeking related facts. [Citations omitted.] This doctrine of 'waiver by testimony' (which is recognized in some form in almost every jurisdiction in the United States, 8 J. Wigmore, Evidence § 2276 at 458 n.2 [McNaughton rev. 1961]) is not based on any true waiver theory at all in the usual sense of a voluntary, intelligent relinquishment of a known right." *Taylor* v. *Commonwealth,* 369 Mass. 183, 189 (1975).

1. *Violet Weed.*

Violet Weed testified before the grand jury after a conversation with her attorney and after the prosecutor had asked her in the grand jury room whether she understood that she had "the right to have an attorney before the [g]rand [j]ury," that she had a right "under the Fifth Amendment" to refuse to answer any questions "if a truthful answer may tend to incriminate you," and that if she

testified before the grand jury, she might "be waiving" her right to assert her privilege "at a later proceeding," and that a false answer could result in a perjury charge. To each inquiry, she responded that she understood, and when asked, "Do you choose to go forward without having your attorney present?" replied, "Yes."

At the waiver hearing Violet testified that the only advice she received from her attorney was to "do the best you can." She also related that before going into the grand jury room, she was in a cafeteria (presumably in the courthouse) with her husband, a friend of Trigones, and the prosecutor. She stated that the prosecutor "was talking to the three of us but he was facing my husband, I didn't hear the first part of the conversation too much but I heard the end part saying 'I don't see a problem here. You don't need an attorney.' Something to that effect." Violet testified before the trial judge that when the prosecutor thereafter advised her of her rights and asked if she understood them, she was not paying attention because she "figured it was normal procedure before starting to ask me questions."

The argument before us is that Violet never intended to waive her Fifth Amendment right by testifying before the grand jury. The applicability of the doctrine of waiver by testimony is dependent upon whether the "initial testimony (which brings about the waiver) is . . . freely and voluntarily given." *Taylor* v. *Commonwealth*, 369 Mass. at 190. There the court concluded that the initial testimony of the witness, who was sixteen years of age, who appeared in court alone (without his parents or counsel), who "displayed much reluctance and hesitancy in responding to questions put to him," *id.* at 191, and who had not been advised of his rights by the trial judge before whom he testified, "was not so freely and voluntarily given as to effect a waiver of his privilege on later questioning." *Id.* at 193. Compare *Commonwealth* v. *Funches*, 379 Mass. 283, 291 & n.10 (1979), where the court noted that the nineteen year old witness had counsel and "answered all questions willingly until he invoked the privilege" but concluded that

the substance of the answers previously given was not sufficient to result in a forfeiture of the privilege.

On the record before us, we see no error in the trial judge's finding that Violet Weed thoroughly understood her testimonial privilege before she testified in the grand jury proceedings. The record shows that she chose to ignore the specific and detailed recitation of her rights (which she acknowledged that she understood) in favor of a previous statement by the prosecutor that she can recall in only the vaguest of terms. That fact, as well as the fact that her attorney's advice to her could be viewed as less than helpful, are insufficient to support a conclusion that she was "ignorant, misinformed or confused about h[er] rights," *Taylor* v. *Commonwealth,* 369 Mass. at 192, or that her testimony was not voluntarily or freely given.

Trigones' trial was a "probable, logical, or natural continuation or outgrowth of the proceeding or inquiry in which prior testimony ha[d] been given by the witness." *Matter of DeSaulnier (No. 2),* 360 Mass. 761, 766 (1971). Compare *Commonwealth* v. *Borans,* 388 Mass. 453, 458-459 & n.10 (1983) ("Unlike the *Borans* case, the testimony at issue in *DeSaulnier* was part of a continuing inquiry into judicial misconduct with the same witness, the same defendants, and the same offenses"). Violet had waived her right to refuse to testify, "at least to the extent of the subject matter of the questions which [s]he has answered" in the grand jury proceeding and at the suppression hearing on Trigones' motion. *Matter of DeSaulnier (No. 2),* 360 Mass. at 766.

2. *Roland A. Weed.*

We see nothing in the record, however, which shows that Roland Weed had a thorough understanding of his Fifth Amendment rights.

The Commonwealth asks that we look to the Miranda waiver card signed by Roland on July 12, 1983. Assuming for the sake of discussion that the waiver card put the witness on notice of his right to assert the privilege in the grand jury room, the adequacy of that notice was undone by the

prosecutor a week later, when Roland appeared before the grand jury.

At the waiver hearing, Roland Weed related that no one had advised him prior to his grand jury testimony that by testifying he would be waiving his testimonial privilege. His memory of the conversation with the prosecutor in the cafeteria was more definite than Violet's: "[The prosecutor] said to me in particular 'I know you have a lawyer and if you want your lawyer present we'll get him for you.' Then after he said that 'But it really isn't necessary. There isn't anybody over here that's going to have any problems. You don't need no lawyer.' Something to that effect anyway . . . . Later on out in front of his door he said the same thing. He repeated about the same thing to us that there'd be no problem." When asked whether the prosecutor had specified as to what he meant by saying there would be "no problem," Roland Weed replied, "Well, perjury I imagine is what he meant. I believe he probably even mentioned the word perjury, but I'm not sure."

The grand jury minutes of Roland's testimony do not indicate that the prosecutor recited to him his rights or the possible consequences of his testimony, as was done with Violet. Although the Weeds had retained counsel, there is nothing on the record which shows that Roland was advised by his lawyer on the issues of his privilege against self-incrimination and waiver. The record shows only that when Roland appeared before the grand jury, he did so having been advised by the prosecutor that counsel was unnecessary and that there would be "no problem" so long as the truth was told. The prosecutor conducting the waiver hearing before the trial judge was the same prosecutor who had conducted the grand jury proceedings and who had spoken with the Weeds. At the waiver hearing, the prosecutor neither denied nor contradicted any of the statements attributed to him, either under oath or otherwise. Rather, he sought only to minimize the effect of his statements.

Although a grand jury witness "is entitled to no warnings of constitutional rights," *United States* v. *Chevoor*, 526 F.2d

178, 181 (1st Cir. 1975), citing *United States* v. *DiMichele*, 375 F.2d 959 (3d Cir.), cert. denied, 389 U.S. 838 (1967); cf. *Taylor* v. *Commonwealth*, 369 Mass. at 192; Smith, Criminal Practice and Procedure § 800 (2d ed. 1983), he has a right not to be misinformed or led astray by the Commonwealth. See *Taylor* v. *Commonwealth*, 369 Mass. at 192. The prosecutor knew what Roland's testimony would be and that it was incriminating. Unlike the situation with Violet, the prosecutor never advised Roland, on the record, of his rights in order to offset any claim of reliance on the earlier conversation. In view of the transcript of the grand jury minutes and Roland's testimony at the hearing before the trial judge on the issue of waiver, we think it was incumbent upon the Commonwealth to show at the waiver hearing either that the witness had not been misinformed by the prosecutor or that, notwithstanding the unrefuted conversation, the witness was neither confused about nor ignorant of his rights when he testified before the grand jury. Because the Commonwealth failed to do either, we must conclude from the circumstances of the witness's appearance before the grand jury that his testimony "was not so freely and voluntarily given as to effect a waiver of his privilege on later questioning." *Taylor* v. *Commonwealth*, 369 Mass. at 193.

In reviewing the transcript of the waiver hearing, we have paid particular attention to those portions of Roland's testimony which were highlighted by the Commonwealth at oral argument before us. We find nothing in the entire record, including the transcript of the suppression hearing, to show that the prosecutor retracted or corrected his earlier advice to Roland or that the misinformation was corrected by an attorney retained by Roland at any time during the period between the grand jury proceeding and the suppression hearing. If anything, it appears from the transcript that the prosecutor's earlier statements may well have been reinforced during that time span. Consequently, the reasoning which supports our conclusion that Roland Weed did not waive his testimonial privilege by his grand jury testimony is equally applicable to his testimony at the suppression hearing.

In sum, we cannot conclude that his testimony on either occasion was "so freely and voluntarily given as to effect a waiver of his privilege on later questioning" at Trigones' trial. *Taylor* v. *Commonwealth,* 369 Mass. at 193.